UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SOLOMON LICHTENSTEIN,<br><br>Defendant. | **INDICTMENT**<br><br>25 Cr. 491 |

**COUNT ONE**
(Securities Fraud)

The Grand Jury charges:

**BACKGROUND**

1. Unless stated otherwise, at all times relevant to this Indictment:

**Relevant Entities and Persons**

    a. SOLOMON LICHTENSTEIN, the defendant, was a resident of Stony Point, New York.

    b. The Taraxa Capital Fund, LP ("Taraxa Capital") was a limited partnership that operated as an investment fund. The general partner of Taraxa Capital was the Taraxa Capital Group, LLC. LICHTENSTEIN was the manager of the general partner.

    c. Lightstone Trading Inc. ("Lightstone Trading") was an entity operated by LICHTENSTEIN.

**Taraxa Capital**

2. SOLOMON LICHTENSTEIN, the defendant, solicited funds for investment through Taraxa Capital from family members, friends, and acquaintances. Investors in Taraxa Capital became limited partners in the fund. LICHTENSTEIN told potential investors that he

expected Taraxa Capital to achieve an annual return of 100 percent or more. LICHTENSTEIN represented further to potential investors that the fund managed approximately $50 million.

3. SOLOMON LICHTENSTEIN, the defendant, told potential investors in Taraxa Capital that the fund traded primarily options and futures on large stock indices and exchange traded funds. LICHTENSTEIN told potential investors that the fund closed out each of its positions at the end of each day, which, LICHTENSTEIN represented, reduced risk. LICHTENSTEIN further told potential investors that Taraxa Capital would make money as long as the stock market did not move more than approximately two percent in one day.

4. Under the terms of the Confidential Private Placement Memorandum ("PPM") for Taraxa Capital, which LICHTENSTEIN, the defendant, sent to potential investors, investors were to be charged a management fee each month of 1/12 of two percent, the equivalent of a roughly two percent fee on an annualized basis, of their balance in the fund at the end of each month. Investors were also liable for some operating expenses of the fund. Investors were also to be charged an annual performance fee that ran as high as forty percent of the fund's annual net profit, depending on the fund's performance.

5. Additionally, under the PPM, investors generally were required to invest a minimum of $25,000 initially and a minimum of $10,000 thereafter. Investors were required to maintain their investments in the fund for at least one year and were permitted to withdraw their funds only on the last business day of each year.

6. SOLOMON LICHTENSTEIN, the defendant, told potential investors that he had spent years "honing his skills in multifaceted trading strategies using market analysis and risk mitigation," and that he had done so "[u]nder the tutelage of mentors with decades of experience

working for large financial institutions." LICHTENSTEIN further represented to potential investors that he had made a 1,000 percent annual return investing his own money.

7. Once Taraxa Capital started operating, SOLOMON LICHTENSTEIN, the defendant, told investors as well as potential investors that, based on how the fund was performing, they should expect investment returns of approximately 10 to 15 percent per month.

### Lightstone Trading

8. SOLOMON LICHTENSTEIN, the defendant, solicited loans through Lightstone Trading from family, friends, and acquaintances. LICHTENSTEIN told potential lenders that he would use loan proceeds to invest in Taraxa Capital, pay them a guaranteed monthly return of five percent of the loan principal from the profits he received from investing the proceeds, and retain any additional profit for himself. LICHTENSTEIN marketed Lightstone Trading as a way to invest in Taraxa Capital at no risk and to earn a guaranteed monthly return.

### THE FRAUD

9. SOLOMON LICHTENSTEIN, the defendant, failed to invest a material portion of the funds he received for investment in Taraxa Capital and Lightstone Trading. Instead, he used a material portion of the funds he received for his personal use and to pay returns to some investors to create the illusion that Taraxa Capital and Lightstone Trading were legitimate investments.

10. SOLOMON LICHTENSTEIN, the defendant, made false material statements to potential investors while soliciting funds for investment in Taraxa Capital and Lightstone Trading. LICHTENSTEIN had no basis for his representations regarding his estimated annual return of 100 percent or more and the amount of money the funds had under management. Further, his representations regarding the returns he had received to date with his supposed investing strategy and his prior investing experience were materially false.

11.     SOLOMON LICHTENSTEIN, the defendant, made false material statements to investors while operating Taraxa Capital and Lightstone Trading. LICHTENSTEIN falsely told investors that he had invested all of the money they had given him for investment. LICHTENSTEIN further provided investors with false and materially inflated monthly returns for Taraxa Capital.

12.     SOLOMON LICHTENSTEIN, the defendant, received around $3 million in investor funds from his victims but deposited only around $880,000 of those funds into Taraxa Capital's and Lightstone Trading's investment trading accounts. He invested approximately $590,000 of the money he deposited, approximately $213,000 of which he lost due to losing trades.

13.     SOLOMON LICHTENSTEIN, the defendant, embezzled approximately $1 million in investor funds for his personal use, including for home mortgage payments, bars, restaurants, travel, and cash withdrawals.

14.     The dozens of investors in Taraxa Capital and Lightstone Trading lost a total of more than $1.5 million.

15.     From at least in or about July 2022 through in or about August 2024, in the Southern District of New York and elsewhere, SOLOMON LICHTENSTEIN, the defendant, knowingly and willfully, directly and indirectly, by the use of means and instrumentalities of interstate and foreign commerce, and of the mails, and of facilities of national securities exchanges, used and employed, in connection with the purchase and sale of limited partnerships in Taraxa Capital and loans to Lightstone Trading, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which

they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon purchasers and sellers of such securities, to wit, LICHTENSTEIN solicited funds for Taraxa Capital and Lightstone Trading through materially false and fraudulent misrepresentations and made materially false statements about his use of investor funds and Taraxa Capital's investment returns, all as described above.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2.)

## COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

16. The allegations set forth in paragraphs 1 through 14 of this Indictment are repeated and realleged as if set forth fully herein.

17. From at least in or about July 2022 through at least in or about August 2024, in the Southern District of New York and elsewhere, SOLOMON LICHTENSTEIN, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit LICHTENSTEIN solicited and caused interstate and foreign wire transfers to be made to his personal and business accounts through his fraudulent scheme, as described above.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

18. As the result of committing the offenses alleged in Counts One and Two of this Indictment, SOLOMON LICHTENSTEIN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Asset Provision

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been comingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

Foreperson

JAY CLAYTON
United States Attorney